CAMPTON *v.* PLYMOUTH AND HOLDERNESS.

Towns which have been required to contribute to the construction of highways and bridges in another town, under *c.* 55, *s.* 1, of the Compiled Statutes, may be required to contribute towards repairing the same highways and rebuilding the same bridges, under *c.* 72, *s.* 4, of the General Laws; and the county commissioners may also fix the ratable contribution which such towns shall make for the future repair and maintenance thereof.

PETITION, praying that the towns of Plymouth and Holderness be ordered to pay a portion of the expense of rebuilding a bridge and repairing a highway in Campton, and of hereafter keeping the same in repair. The highway in question was laid out by a judgment upon a report of the county commissioners at the May term, 1868. In that report the commissioners estimated the expenses of making said highway at $5,500. The commissioners, upon due process to Plymouth and Holderness, found that the last named towns would be greatly benefited by the highway, and that Campton would be excessively burdened by defraying all the expenses of its construction, and they accordingly apportioned said expenses, and directed that Plymouth should pay $2,100 and Holderness $1,400 thereof, which was incorporated into their report, and judgment rendered accordingly. Plymouth and Holderness paid the sums named above towards the construction according to the report and judgment. A substantial part of the expense of building the new highway was the erection of a bridge across the Pemmigewasset river near Livermore's falls. The petition then alleges that the bridge there erected was made of wood, and that on May 20, 1884, the same became decayed, insufficient, and out of repair, and that thereupon Campton rebuilt it of iron at an expense of $7,100, which expense is and will be excessively burdensome to Campton, and that Plymouth and Holderness are greatly benefited by it and by said highway, and ought, and are legally bound, to contribute towards said expenses, and to the maintenance of said highway and bridge hereafter.

This petition was referred to the county commissioners at the November term, 1885. At the hearing before the commissioners, February 16, 1886, the towns of Plymouth and Holderness appeared and objected to the jurisdiction of the commissioners in the premises, and denied that any legal ground for relief is shown by the petition,—first, because the petition of Joseph Holmes and others for the highway and bridge originally laid out and built was filed in court, and all proceedings thereon held under c. 55, s. 1, of the Compiled Statutes then in force; that under this statute the towns of Plymouth and Holderness had no voice in the laying out of said highway, and the judgment of the commissioners imposed all the burden upon said towns that the law at that time contemplated or allowed, and that upon the discharge of such burden their liability thereafter to render contribution for rebuilding or repairing said highway forever terminated; second, because c. 72, s. 4, of the General Laws, under which the plaintiffs seek relief, applies only to cases where the towns benefited have not contributed to the original construction of the highway, and was not intended to apply to towns that had paid contribution under c. 55, s. 1, of the Compiled Statutes, and any attempt to apply such construction to said statute would give it a retrospective action; third, because the judgment on the aforesaid petition of Joseph Holmes and others,

that Plymouth should pay $2,100 contribution and Holderness $1,400 towards the highway in question, was an adjudication of the whole matter of contribution between the towns of Campton and Plymouth and Holderness, and the satisfaction of such judgment, as admitted in the plaintiffs' petition, is a bar to any subsequent petition for aid in reference to the same highway.

The commissioners reported that in their opinion Plymouth should pay $2,000 towards rebuilding the bridge and repairing the highway, and three eighths of the expense of hereafter keeping the highway and bridge in repair, and that Holderness should pay $500 towards rebuilding the bridge and repairing the highway, and one eighth of the expense of hereafter keeping the same in repair.

The defendants moved to dismiss the petition and all proceedings thereunder; and the questions thereupon arising were reserved for the opinion of the court.

*Chase & Streeter* and *Page & Story*, for the plaintiffs.

*Burleigh & Adams*, for Plymouth. The original petition for this highway was filed at the May term, 1866. The statute of 1850 was then in force. No change in the law was made until the adoption of the General Statutes, July 6, 1867. The highway was laid out and the bridge built under that petition. The towns of Plymouth and Holderness had no voice in the laying out of the highway, nor could they, as the law then stood, be heard on the question as to whether or not Campton would be excessively burdened and Plymouth and Holderness greatly benefited by its construction until after the commissioners had made a preliminary decision against them. The powers of the commissioners under that statute were plenary. "Said commissioners shall make examination of all the circumstances relating to said road, its public utility, the expense of its construction, the ability of such town or towns to bear the expense, and the benefit to such town or towns and any other towns in the vicinity from the construction thereof," etc. They assessed Plymouth $2,100 and Holderness $1,400. Campton's disability, past, present, and future, and the present and future benefits accruing to the defendant towns, were considered in fixing the amount each town should pay.

The statute says, "And any such report of said commissioners being accepted and judgment rendered thereon shall be final and conclusive, and execution issue accordingly." The contributory towns paid the sums assessed. Had the law then permitted future assessments upon towns benefited by new highways, for purposes of repairs or rebuilding, it is reasonable to suppose that the commissioners would not have imposed such heavy contributions upon these towns in making the original assessment. The law required Campton to keep this road in repair, and to rebuild it if necessary.

It was a continuing burden imposed by statute, and understood by the tribunal that ordered contribution. It was understood by all concerned that the liability of the defendant towns was fixed for all time at definite figures relative to this particular road, and when the assessment was paid that all liability was at an end. We contend that no statute passed since the filing of the original petition was intended to give Campton any right to further contribution from these towns for rebuilding or repairing the highway in question, and if such intention is found by the court, that the statute is unconstitutional in that it compels a party to pay the same person twice for the same thing, and to retry an issue that has been once adjudicated.

The injustice of compelling a town to contribute towards the building of a road beyond their own limits, without an opportunity to be heard on the question of its public utility, led to the enactment of c. 62, ss. 10, 11, and 12, Gen. Sts., and c. 68, ss. 10, 11, and 12, Gen. Laws. Under these statutes the town sought to be charged are entitled to notice of the original petition, and are made a party from the beginning to the end of all proceedings relative to the highway petitioned for in which their interests may be affected by a final judgment. Section 12, *supra*, provides that "in case the substantial part of the expense of making the highway is the erection of a bridge, such other town shall at all times contribute their proportion towards the repair and maintenance of such road; and the commissioners in such case, in their report laying out the same. shall determine the relative proportion to be borne by such other town towards the repair and maintenance of such road, until the court, upon proper proceedings, shall change the same."

This is the only authority given anywhere in the statutes for compelling a benefited town to contribute towards the future maintenance of a highway. This alone empowers the commissioners to determine the relative proportion to be borne by such town towards the future maintenance and repairs of such road; but this power can be exercised only in accordance with the conditions and limitations contained in the statute. Observe, that by s. 10 the occasion must be first the laying out of a new highway; second, the benefited town must have notice of "the time and place of hearing upon the original petition;"—and by s. 12 the commissioners are to determine the relative proportion of aid to be borne by the town "in their report laying out the same." The commissioners in their report have undertaken to apply a law which plainly and solely relates to the original laying out and construction of a highway to this particular case, which is the rebuilding of a bridge on a road that had been laid out almost twenty years. It is not absolutely certain that the court will assent to our view, that the commissioners had no right to order aid from the defendant towns in rebuilding this bridge; but the proposition, that the commissioners plainly

exceeded their authority in ordering future contribution, we think is unassailable.

*Bingham & Mitchell* and *E. P. Jewell*, for Holderness.

BLODGETT, J.   At the time the proceedings for the highway now in controversy were commenced, the statute authorized the commissioners to apportion part of the expense of its construction to other towns in the vicinity benefited thereby, but gave them no power to award contribution for its future maintenance and repair. Comp. Sts., *c.* 55, *s.* 1.   Under this statute the defendants were found liable to contribution; and the commissioners in their report fixed the amounts they should respectively pay towards the construction of the highway.   Having done this, the duty of the commissioners was performed and their power exhausted; and there being no facts tending to show that they violated their trust by increasing the award against either of the defendants on account of the expense of the subsequent maintenance of the highway, and the legal presumption also being to the contrary, the judgment upon the report is to be taken as an adjudication that the defendants were assessed agreeably to the statute and not otherwise.

The defendants' contribution to the original construction of the highway not being a bar to the present petition for rebuilding and keeping it in repair, and the power of the commissioners to impose contribution upon them for rebuilding being expressly conferred by statute, the only matter remaining to be considered is that part of the report which requires the defendants to contribute to its repair in the future.

In respect of future contribution, the authority of commissioners primarily rests upon *c.* 72, *s.* 4, Gen. Laws, which provides that " when the expense of rebuilding or repairing a highway would be excessively burdensome to the town in which it is situate, and another town is greatly benefited by such highway, the commissioners, on petition to the supreme court and proceedings thereon, as in the case of laying out a highway, may order a portion of the expense *to be paid by such other town.*"   In express terms, this statute does not authorize commissioners to award contribution for the future, but nevertheless we think it is to be so construed. There is certainly nothing in its language showing that the legislative purpose was to restrict its operation to immediate repairs, rather than to those certain to be required sooner or later in the ordinary course of events.   The phrase " rebuilding or repairing a highway," as used in the section under consideration, as well as in the preceding *s.* 1 and the title of the chapter itself, fairly means keeping a highway in repair in view of its continuing necessities and the continuing duty of the towns benefited by it, as contended by the plaintiffs' counsel; and therefore repairing is not to be construed as limited to one point of time, but as relating to the future as well as to the present.

The same conclusion follows from the application of the familiar principle in statutory construction, that all statutes upon the same subject-matter are to be considered in interpreting any one of them. The substantial part of this highway is a bridge, and when this is the case the last clause of *s.* 12, *c.* 68, provides that other benefited towns than the one in which it is situate shall at all times contribute their proportion towards its repair and maintenance, to be determined by the commissioners at the time of laying out the highway.   It is true that this clause is directly applicable only to highways laid out subsequently to its adoption, but it is, nevertheless, important in its relation to the present case as showing that the legislative purpose then was to compel all benefited towns to contribute proportionally towards the future maintenance of highways burdensome to the towns where situate, and in which the building of bridges constituted a substantial part of the expense of their construction.

This material change in the law first appeared in the revision of 1867.   The effect was manifestly to discriminate between precisely similar cases, and make the matter of future contribution depend entirely upon the point of time when the petition for such a highway happened to be filed.   For example: If the original petition for this highway had been filed at the November term, 1867, rather than at the May term, 1866, when it was actually filed, it would have clearly come within the express terms of the clause referred to, although it is equally clear that the subject-matter of the petition came within the reason and policy of the statute no less in the former year than in the latter.   To provide against and remedy the inequality and injustice that would otherwise necessarily result in this class of cases, the legislature enacted *s* 4 at the same session the bridge clause was enacted, and thereby put cases arising before the adoption of that clause on the same footing with those arising after its adoption; and also went one step further, and extended the right of future contribution to all cases of burdensome highways, whether from bridges or otherwise, arising before the adoption of the clause and not included in it, as well as to cases arising after its adoption.

The commissioners did not exceed their authority in apportioning part of the future maintenance of the highway to the defendants; but if time brings changes that may make the apportionment inequitable, it may be altered by the court upon proper proceedings.   G. L., *c.* 68, *s.* 12; *c.* 72, *s.* 4.

*Judgment for the plaintiffs on the report.*

ALLEN, J., did not sit : the others concurred.