Cheshire, }
March 5, 1907. }

## O'NEIL & a. v. WALPOLE.

In a proceeding under the statute authorizing the selectmen of a town situate on the Connecticut river to contract with the officers of a contiguous town in Vermont for the purchase of the real estate, easement, or franchise of a bridge or ferry corporation, if in their opinion the public good requires a highway to be laid out over said property (P. S., c. 67, s. 12), the proposed highway is laid out and legally established when the selectmen, acting in pursuance of a vote of the town, enter into such a contract and effect a purchase of the property for highway purposes.

The statute providing that the expense of rebuilding or repairing a highway may be apportioned among towns greatly benefited thereby (P. S., c. 73, s. 4) applies to existing highways and authorizes an apportionment of the expense of future maintenance.

A petition of a town for the apportionment of highway expense among other towns is not necessarily invalidated because it was filed directly with the county commissioners, instead of in the superior court.

To confer authority upon the superior court to award an apportionment of highway expense, it should appear that towns other than that in which the highway is located will be "greatly" benefited thereby.

PETITION, for a highway in the defendant town over the Tucker toll-bridge across the Connecticut river. Transferred from the April term, 1906, of the superior court by *Pike*, J., upon an agreed statement of facts.

At the annual town-meeting of Walpole, held March 8, 1904, resolutions were adopted under a proper article in the warrant for the meeting, one of which authorized, instructed, and directed the selectmen to unite with the selectmen of the town of Rockingham, Vermont, "and contract with them for the purchase of the real estate, easement, and franchise of the Tucker toll-bridge, so called, owned by the Bellows Falls Canal Company, and to contract with said town of Rockingham as to the proportion of expense to be borne by each town in such purchase and in the construction and maintenance of a highway over the Connecticut river at the place where said toll-bridge is located, and as to the proportion which each town shall contribute toward payment of damages to third persons injured in the use of said highway." The town of Rockingham, at a meeting held March 1, 1904, under a proper article in the warrant authorized and instructed its selectmen to unite with the town of Walpole in purchasing the real estate, easement, and franchise of the Tucker toll-bridge at an expense to the town of Rockingham not exceeding $6,666.66 nor one third of the cost of

the property, and to agree with the town of Walpole in respect to the portion of the cost and the future expense of keeping the bridge in repair, etc., to be borne by each town.    Subsequently, the Bellows Falls Canal Company conveyed to the towns of Walpole and Rockingham and their successors, by warranty deed, " the Tucker bridge, so called, extending over the Connecticut river from the village of Bellows Falls in said Rockingham to said Walpole, with the abutments and the land upon which the same stand, and all the rights and privileges thereto granted by the state of New Hampshire or otherwise."

At the October term, 1905, of the superior court, the plaintiffs' petition was referred to the county commissioners, who appointed January 25, 1906, as a day of hearing and duly notified the parties thereof.    January 4, 1906, the selectmen of Walpole presented to the commissioners a petition setting forth that the expense of laying out and maintaining the highway described in the original petition would be excessively burdensome to Walpole and that the towns of Alstead, Acworth, and Langdon would be greatly benefited thereby, and praying that a part of the expense of the highway be assigned to those towns and that the commissioners adjudge what proportion of the expense of the future maintenance of the bridge and highway should be borne by each of said towns, if the highway was laid out.    The commissioners appointed a hearing upon this petition, to be held at the same time and place as that upon the original petition, and caused due notice to be given to the towns of Rockingham, Alstead, Acworth, and Langdon.    The three towns last named appeared at the hearing and objected to the commissioners considering the petition or any matter affecting their rights or interests, because, as they alleged, the commissioners had "no jurisdiction or authority to determine any question affecting such rights or interests."

At the April term, 1906, of the superior court, the commissioners filed their. report, setting forth that Walpole filed a petition as above stated, that notice was given to Rockingham, Alstead, Acworth, and Langdon, and that the three towns last named appeared, etc.    They laid out the highway as prayed for in the original petition.    They further reported that "·Walpole would be excessively burdened by the building and maintaining of said highway and that Alstead, Acworth, and Langdon would be benefited thereby," that the substantial part of the making of the highway is the maintenance of a bridge, and that they therefore found " that Walpole shall bear one third of two thirds of the expense, Alstead one third of two thirds; Acworth one sixth of two thirds, and Langdon one sixth of two thirds."    They further reported that, inasmuch as the town of Rockingham owned one

third of the bridge and was ready and willing to enter into a contract to bear one third of the expense of maintaining it, they made provision " only for two thirds of the expense of such maintaining, leaving the one third to be provided for by Rockingham."

*Charles H. Hersey* and *John E. Allen*, for the plaintiffs.

*Thomas E. O'Brien*, for the town of Walpole.

*Edward M. Smith* and *Ira Colby & Son*, for the towns of Alstead, Acworth, and Langdon.

BINGHAM, J.  " Highways are only such as are laid out in the mode prescribed therefor by statute, or as have been used as such for public travel thereon, other than travel to and from a toll-bridge or ferry, for twenty years." P. S., c. 67, s. 1.  One method prescribed by statute for laying out highways is by petition and hearing before the selectmen of the town in which the proposed highway is situated. P. S., c. 67, s. 2; *State* v. *Morse*, 50 N. H. 9. This method is of general application and includes within its scope the laying out of highways within the limits of any town in the state.

Another and different method is provided for laying out highways in towns bordering on the Connecticut river and where the proposed highway crosses that river. P. S., c. 67, ss. 12, 13; *Stearns* v. *Hinsdale*, 61 N. H. 433, 435.  By this method, a town situated on the Connecticut river may, at any legal town-meeting, authorize its selectmen to unite with the selectmen or other proper officers of any contiguous town or towns in Vermont, and contract with them for the purchase of any real estate, or the privilege, easement, or franchise of any bridge or ferry corporation, if in their opinion the public good requires a highway to be laid out over said property. P. S., c. 67, s. 12.  In a proceeding under this statute, a proposed highway is laid out and established when the selectmen, acting in pursuance of a vote of the town, enter into a contract with the officers of the adjoining town or towns in Vermont, and purchase the real estate, or the privilege, easement, or franchise of a bridge or ferry corporation, for the highway ; and the questions of public good and the location of the highway are determined by the selectmen when they enter into the contract and purchase the necessary property.  It was under this statute that the vote of Walpole was passed; and it follows, as a necessary consequence, that when its selectmen, in pursuance of the vote, entered into the contract with the selectmen of Rockingham and purchased the Tucker toll-bridge property, the

road over that bridge became a public highway, and nothing remained to be done by way of petition or hearing, either before the selectmen or the commissioners, for its legal establishment.

It seems, however, that after the contract was made and the bridge was purchased the plaintiffs filed a petition with the selectmen of Walpole, requesting them to lay out a highway over the bridge, and upon its being denied took an appeal to the superior court, that the court referred the petition to the county commissioners, and that while the proceeding was pending before them, the selectmen of Walpole, in behalf of the town, petitioned the commissioners (in accordance with sections 11, 12, and 13, chapter 69, of the Public Statutes) for an apportionment between it and the towns of Alstead, Acworth, and Langdon of the future expense of repairing and maintaining the highway; and it is contended in behalf of these towns that, inasmuch as the commissioners were without authority to lay out a highway where one already existed, they could not lawfully apportion the future expense of repairing and maintaining the bridge. But the fact that over the route petitioned for there was an existing highway does not preclude the town of Walpole from having an apportionment of the future expense of maintaining it. In section 4, chapter 73, of the Public Statutes, it is provided that "when the expense of rebuilding or repairing a highway would be excessively burdensome to the town in which it is situate, and another town is greatly benefited by the highway, the supreme [now superior] court, upon petition and proceedings thereon as in the case of laying out a highway, may order a portion of the expense to be paid by such other town." This statute applies to existing highways (*Pittsburg* v. *Clarksville*, 58 N. H. 291); and while it does not in express terms authorize an apportionment of the future expense of maintaining such highways, it has been construed to confer such authority. *Campton* v. *Plymouth*, 64 N. H. 304, 308. In proceedings under it, the petition should be filed in the superior court and by it referred to the county commissioners, and not filed directly with the commissioners, as was done in this case. But the course here pursued does not necessarily render the proceedings invalid. It would seem that the parties had been fully heard before the proper tribunal, and if this is so, the petition of Walpole may be considered as though it had been filed in court in the first instance; at least, the superior court may so treat it if in its opinion justice requires that it should be.

There is one other matter that remains to be considered. In the report of the commissioners it is stated that Walpole would be excessively burdened by maintaining the bridge, and the other towns named benefited thereby. To give the superior court

authority to award an apportionment, it should appear that the other towns are " greatly benefited." P. S., c. 73, s. 4; *Langley* v. *Barnstead*, 63 N. H. 246. If the omission of the word " greatly " in the report is due to a clerical error in printing the case or in drafting the report of the commissioners, such steps may be taken in the superior court as will obviate this objection. It is further suggested that the contract between the towns of Walpole and Rockingham relating to the purchase of the bridge, and defining their rights and obligations as owners therein, should be reduced to writing and filed as a part of the record in this case. When these things are done and an order is made allowing the above amendment, the report of the commissioners, so far as it relates to the laying out of the highway, should be dismissed ; but so far as it pertains to the apportionment of the future expense of maintaining the bridge across the river, it should be sustained and a decree entered accordingly.

*Case discharged.*

All concurred.